Filed 12/18/23 Wing v. Chico Healthcare Wellness Centre CA2/5
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JILL WING, Plaintiff and Respondent, v. CHICO HEALTHCARE & WELLNESS CENTRE, LP, Defendant and Appellant. | B310232 (Los Angeles County Super. Ct. No. BC719077) |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Reversed and remanded.

Fisher & Phillips, Grace Y. Horoupian, Shaun J. Voight, Rebecca S. King and Raymond W. Duer; Zarmi Law and David Zarmi for Defendant and Appellant.

Mara Law Firm, David Mara and Matthew Crawford for Plaintiff and Respondent.

_____

Jill Wing brought claims under the Private Attorneys General Act of 2004 (PAGA) against her former employer, Chico Healthcare & Wellness Centre, LP. PAGA allows an aggrieved employee to sue for civil penalties under the Labor Code as a representative of the State. (Lab. Code, § 2699 et seq.)[1] Wing asserted PAGA claims on her own behalf (individual claim) and on behalf of similarly situated employees (non-individual claim). Chico appealed from an order denying its motion to compel arbitration of Wing's individual and non-individual PAGA claims.

In a previous opinion, we affirmed the trial court's order denying the motion to compel based on then-controlling case law, *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*). Chico petitioned for review in the California Supreme Court, which granted the petition and deferred further action pending its consideration of and disposition in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*). The high court has now directed us to vacate our previous decision and reconsider the cause in light of *Adolph*.

In *Adolph*, *supra*, 14 Cal.5th at page 1114, the California Supreme Court considered the United States Supreme Court's examination of PAGA in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ——, [142 S.Ct. 1906, 1919, fn. 4] (*Viking River*). *Viking River* rejected that portion of *Iskanian* that prohibited an employer from compelling arbitration of an employee's individual PAGA claim. (*Ibid.*) Under *Viking River,* Wing may be ordered to arbitrate her individual PAGA claim. We thus reverse that

---

[1]     All further undesignated statutory references are to the Labor Code.

portion of the trial court's order denying arbitration of her individual PAGA claim.

Remaining is the question of her non-individual PAGA cause of action. *Adolph* provides the answer. It holds, "Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph*, *supra*, 14 Cal.5th at p. 1114.) Applying *Adolph*, we conclude the trial court properly denied the motion to compel arbitration of Wing's non-individual PAGA claim. Trial of the non-individual claim may proceed after arbitration of the individual claim is concluded.

We therefore reverse in part, affirm in part, and remand with directions to the trial court to stay litigation of Wing's non-individual PAGA claim until after arbitration of her individual claim is completed.

## *PROCEDURAL BACKGROUND*

On October 17, 2017, Wing was hired to work for Chico as a receptionist at a skilled nursing facility. As a condition of her employment, Wing agreed to be bound by Chico's Alternative Dispute Resolution Policy (ADR Policy), which provided that "final and binding arbitration" would be the exclusive means for resolving "covered disputes" between the employee and employer.

The ADR Policy defined "covered disputes" as including "any dispute arising out of or related to my employment, the terms and conditions of my employment and/or the termination of your employment [*sic*], including, but not limited to, the following: [¶] Alleged violations of federal, state and/or local constitutions, statutes or regulations; [¶] . . . [¶] Claims alleging

3

failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, failure to pay wages upon termination, failure to provide accurate, itemized wage statements, failure to provide meal and/or rest breaks, entitlement to waiting time penalties and/or other claims involving employee wages, including, but not limited to, claims brought under the Fair Labor Standards Act and any other statutory scheme related to wages or working hours . . . ."

The ADR Policy qualified that it did not intend to "require arbitration of any claim or dispute which the courts of this jurisdiction have expressly held are not subject to mandatory arbitration." The ADR Policy further specified that if any party filed a lawsuit involving some claims that were subject to arbitration and some that were not, "the court will stay, or place on hold, any litigation of the claims in the case that are not subject to arbitration" and require litigation of the non-arbitrated claims to proceed after arbitration is complete.

The ADR Policy included a waiver of class or representative actions: "I understand and agree this ADR Program prohibits me from joining or participating in a class action or representative action, acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claim of others." It also included a severability clause, allowing any illegal, invalid or unenforceable terms to be enforced to the extent permissible and all remaining terms and provisions to continue "in full force and effect."

On June 11, 2018, Wing provided statutorily required notice to the Labor and Workforce Development Agency of alleged

4

Labor Code violations by her employer.[2] (§ 2699.3.) The agency did not respond to her notice within the time provided by statute, allowing Wing to file PAGA claims for wage, overtime, meal break, and other Labor Code violations.[3] She filed her complaint on August 22, 2018, alleging the afore-mentioned PAGA claims as well as individual and class action claims. Relying on the ADR Policy, Chico requested Wing stipulate to arbitrate her individual claims, strike her class claims, and stay her PAGA claims pending the outcome of arbitration. Wing refused; she instead amended her complaint to drop the non-PAGA claims. After an unsuccessful mediation, Chico moved to compel arbitration of Wing's PAGA claims.

The trial court denied the motion. In its statement of decision, the court found it was bound to follow "the Supreme Court precedent of *Iskanian* and the subsequent overwhelming authority reaffirming its holding." Chico timely appealed. We affirmed the judgment, and Chico petitioned for and was granted review by the California Supreme Court. The high court transferred the case to this court with directions to vacate our

---

[2] Wing initially believed her employer was Rockport Administrative Services, LLC. She amended the notice to the agency and her subsequent complaint when she learned Chico Healthcare was her employer.

[3] PAGA requires that an employee give written notice both to the agency and the employer of an alleged Labor Code violation. (§ 2699.3, subd. (a)(1); *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*).) If the agency does not investigate, does not issue a citation, or fails to respond within a specified time, the employee may assert PAGA claims as a representative of the state. (§ 2699.3, subd. (a)(2); *LaFace v. Ralphs Grocery Co.* (2022) 75 Cal.App.5th 388, 394.)

5

prior opinion and reconsider it in light of *Adolph.* Neither Wing nor Chico filed supplemental briefs discussing *Adolph.* (Cal. Rules of Court, rule 8.200(b).)

## DISCUSSION

Where, as here, the trial court's order denying a motion to compel arbitration "rests solely on a decision of law," we review that decision de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

PAGA authorizes an "aggrieved" employee to bring an action for civil penalties on behalf of the state against her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state. (*Kim*, *supra*, 9 Cal.5th at p. 81.) Before PAGA was enacted, only the state could sue employers for civil penalties under the Labor Code. (*Id.* at p. 80.) "A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties. An employee suing under PAGA 'does so as the *proxy or agent of the state's labor law enforcement agencies*.' Every PAGA claim is 'a dispute between an employer and the state.' Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action. 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' The 'government entity on whose behalf the plaintiff

6

files suit is always the real party in interest.' " (*Ibid.*, internal citations omitted.)

In *Iskanian*, our Supreme Court examined an arbitration agreement that, like Chico's ADR Policy, contained a waiver of all representative actions, including PAGA claims. (*Iskanian*, *supra*, 59 Cal.4th at p. 377.) *Iskanian* held "an employee's right to bring a PAGA action is unwaivable" and that such a rule was not preempted by the FAA to the extent the rule barred "predispute waiver[s] of an employee's right to bring an action that can only be brought by the state or its representatives." (*Id.* at pp. 383, 388.) The court reasoned, "the rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state [Labor and Workforce Development] Agency." (*Id.* at p. 384.) Under *Iskanian*, employers could not "require employees to 'split' PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings." (*Adolph*, *supra*, 14 Cal.5th at p. 1118 [citing cases].) This was no longer the rule after *Viking River*.

In *Viking River*, the United States Supreme Court held the FAA applied to preempt *Iskanian*'s prohibition against claim splitting under PAGA. (*Viking River*, *supra*, 142 S.Ct. at p. 1916.) *Viking River* concluded, "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Id.* at p. 1924.) *Viking River* reasoned that portion of *Iskanian* improperly " 'circumscribes the freedom of parties to determine "the issues subject to arbitration" and "the rules by which they will arbitrate" ' " by imposing on them an all-or-

7

nothing choice: arbitrate both individual and non-individual claims or forego arbitration entirely. (*Id.* at pp. 1923-1925.)

The court left intact *Iskanian*'s other holdings. In particular, *Viking River* held the FAA did not preempt *Iskanian* to the extent it held that a predispute categorical waiver of the right to bring a PAGA action was unenforceable as against California public policy. (*Viking River*, *supra,* 142 S.Ct. at p. 1919.) It also affirmed that part of *Iskanian* holding unenforceable an agreement that, while providing for arbitration of individual claims, compelled waiver of non-individual claims. (*Id.* at p. 1925.)

*Viking River* thus permitted an employer to compel arbitration of an employee's individual PAGA claims, even though the arbitration agreement was invalid under *Iskanian* as to waiver of the non-individual claims. (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) Notwithstanding its affirmance of *Iskanian* on the grounds described above, the *Viking River* court concluded "the correct course" was dismissal of the non-individual claim once an employee's individual claim was sent to arbitration. (*Ibid*.) It explained, "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." A plaintiff whose individual claims were "pared away from a PAGA action" would be "no different from a member of the general public" with respect to any non-individual PAGA claims. Thus, he or she would lack statutory standing to pursue any remaining non-individual PAGA claims in court. (*Id.* at p. 1925.) Justice Sotomayor, in a concurring opinion, noted that, "in an appropriate case," California courts would "have the last word"

8

on the state law question of standing under PAGA. (*Ibid.* (conc. opn. of Sotomayor, J.).)

*Adolph*, *supra*, 14 Cal.5th at page 1119 presented the California Supreme Court with Justice Sotomayor's "appropriate case" to address standing under PAGA. *Adolph* held, "Standing under PAGA is not affected by enforcement of an agreement to adjudicate a plaintiff's individual claim in another forum." (*Id.* at p. 1121.) As a result, a plaintiff retains standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA. (*Id.* at p. 1114.)

Here, Wing agreed to an ADR Policy that, as in *Viking River*, required binding arbitration of "any dispute arising out of or related to" her employment with Chico. The ADR Policy also contained a waiver of all representative and non-individual PAGA claims along with a severability clause. The ADR Policy further specified a procedure to stay litigation of claims not subject to arbitration pending completion of arbitration of the covered claims.

Applying *Viking River*, Wing's individual PAGA claims are "covered claims" that are subject to mandatory arbitration under Chico's ADR Policy because they are severable from her non-individual claims. Applying *Adolph*, and the still-valid portions of *Iskanian,* the waiver of her right to bring non-individual PAGA claims under the ADR Policy is unenforceable and Wing retains standing to litigate her non-individual claims after arbitration of her individual PAGA claims. We thus reverse the trial court's order denying Chico's motion to compel arbitration of Wing's individual PAGA claim. We affirm the trial court's order denying the motion to compel arbitration of the non-individual PAGA claim.

9

### *DISPOSITION*

The order denying the motion to compel arbitration of Wing's individual PAGA claims is reversed.  The matter is remanded for the trial court to issue a new order granting the motion to compel arbitration of her individual PAGA claim and stay the litigation of her non-individual PAGA claim until the arbitration is completed.  The parties to bear their own costs on appeal.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



KIM, J.

10